IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILLIP NASH, #90899-022, <br><br> Plaintiff, <br><br> vs. <br><br> LAUREN PACHECO, *et al.*, <br><br> Defendants. | CIVIL NO. 24-00142 DKW-WRP <br><br> ORDER DISMISSING FIRST AMENDED COMPLAINT AND ACTION |

Before the Court is pro se Plaintiff Phillip Nash's First Amended Complaint ("FAC") brought pursuant to 42 U.S.C. § 1983.[1] ECF No. 7. In the FAC, Nash alleges various claims against six individually named Hawaii Police Department ("HPD") officers (Counts 1–6),[2] the County of Hawaii ("County") (Counts 7 and 8), and ten Doe defendants. *Id.* at PageID.47, PageID.52–PageID.53. Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court DISMISSES the FAC. Because the FAC suffers from the same flaws that the Court identified in dismissing the

---

[1] Nash is currently incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"). *See* ECF No. 7 at PageID.54; *see also* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number," enter "90899-022" in "Number" field, and select "Search") (last visited May 10, 2024).

[2] Nash names as Defendants Sergeant Lauren Pacheco, Officer Debney Jaramillo, Officer Gabriel Wilson, Sergeant Z. Fernando, Officer J. Carvalho, Officer J. Masutani. ECF No. 7 at PageID.46–PageID.47.

original Complaint, the Court finds that granting further leave to amend is not warranted. This dismissal is, therefore, with prejudice. Nash's Motion for Leave to Amend Complaint and Request for Stay of Proceedings Pending Plaintiff's Ongoing Disability, ECF No. 8, is DISMISSED as moot.

## I.     STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND[3]

In the early morning hours of March 26, 2021, Lhea Correa called the HPD reporting that her car had been stolen by her girlfriend, Keithlyn Hulihee. ECF No. 7 at PageID.47. Later the same morning, Officer Jaramillo found the vehicle parked near Lehia Beach Park, with Hulihee in the driver's seat and Nash in the front passenger seat. *Id.*

Officer Jaramillo detained both Hulihee and Nash, placed Hulihee in handcuffs, and asked Nash to provide some identifying information. *Id.* After a warrant check came back negative, Officer Jaramillo told Nash that he was free to leave. *Id.*

---

[3] Nash's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

Hulihee then asked Nash to call Correa, and he did so after Officer Jaramillo said he could. *Id.* When Correa answered the call, Nash gave his phone to Officer Jaramillo, and Nash walked away. *Id.* After the call ended, Nash retrieved his phone from Officer Jaramillo. *Id.* Officer Jaramillo thanked Nash and told him to have a nice day. *Id.* Nash walked away, called for a ride, and sat down to wait. *Id.* at PageID.48.

A few minutes later, Sergeant Pacheco, Officer Carvalho, and Officer Masutani arrived on the scene. *Id.* Sergeant Pacheco pointed at Nash and asked Officer Jaramillo who he was. *Id.* Officer Jaramillo responded that Nash had been a passenger in the vehicle. *Id.* Sergeant Pacheco called someone on the phone, provided Nash's name, and asked, "Do you want me to hook him up like we did Enos them?" *Id.* After a brief pause, Sergeant Pacheco said, "Fuck it, I'm going to hook him up . . . anyway." *Id.*

Sergeant Pacheco walked toward Nash and told him that he was being arrested for unauthorized entry into a motor vehicle. *Id.* After Nash protested, stating that he had already been released, Sergeant Pacheco placed Nash in handcuffs. *Id.* The handcuffs were "extremely tight," cutting off circulation to Nash's hands and causing extreme pain. *Id.* The handcuffs left bruises. *Id.* When asked, Nash told Sergeant Pacheco and Officer Carvalho that a nearby backpack was his. *Id.*

Officer Wilson then arrived on the scene, and he asked Nash about the backpack. *Id.* Nash said that the backpack was his. *Id.* A few minutes later, Officer Wilson again asked Nash about the backpack. *Id.* This time, Nash responded by asking if he was being arrested. *Id.* When Officer Wilson responded that Nash was being arrested, Nash said, "I do not know nothing and have nothing to say." *Id.* Officer Wilson then told Officer Carvalho and Officer Masutani that the backpack was abandoned. *Id.* Officer Wilson opened the backpack and found inside a "crystalline substance." *Id.* Nash was then transported to the HPD cellblock in Hilo. *Id.* at PageID.49. Nash remained there for seven hours. *Id.*

On an unspecified date, Nash was separately arrested and transported to FDC Honolulu. *Id.* On June 3, 2021, a federal grand jury charged Nash in a one-count Indictment with possession with intent to distribute methamphetamine. *See* Indictment, *United States v. Nash*, Cr. No. 21-00080 DKW (D. Haw. June 3, 2021), ECF No. 1. The Indictment was dismissed on October 7, 2021, *see* Order for Dismissal, *Nash*, Cr. No. 21-00080 DKW (D. Haw. Oct. 7, 2021), ECF No. 49, after the Court found that Nash had violated the conditions of his supervised release in another case, *see* Minutes, *United States v. Nash*, Cr. No. 03-00495 DKW (9) (D. Haw. Oct. 7, 2021), ECF No. 709. The Court sentenced Nash to fourteen months' imprisonment. *Id.* According to Nash, he was released on April 4, 2022. ECF No. 7 at PageID.49.

On October 31, 2023, the Court found that Nash had again violated the conditions of his supervised release. *See* Minutes, *Nash*, Cr. No. 03-00495 DKW (9) (D. Haw. Oct. 31, 2023), ECF No. 733. The Court sentenced Nash to another eight months' imprisonment. *Id.* Currently, Nash's projected release date is June 26, 2024. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/(select "Find By Number," enter "90899-022" in "Number" field, and select "Search") (last visited May 10, 2024).

Nash alleges that the HPD "does not have a policy to prevent the use or referral of illegally obtained evidence for prosecutor purposes." ECF No. 7 at PageID.50. He further alleges that the HPD "has an established custom and practice of exploiting 'silver platter' referrals to circumvent both state and federal constitutional limits on officers' conduct." *Id.* In support of these allegations, Nash cites a 2014 report summarizing incidents of HPD officer misconduct, and a 2023 case involving HPD Detective William Brown, who is not named as a defendant in this lawsuit. *Id.* According to Nash, the County failed to train and supervise its officers. *Id.*

Nash commenced this action by signing the original Complaint on March 25, 2024. ECF No. 1 at PageID.9. Nash alleged, among other things, that the six individually named HPD officers, the County, and ten Doe defendants violated his constitutional rights. On April 8, 2024, the Court issued an Order Dismissing

Complaint with Partial Leave to Amend and Order to Show Cause. ECF No. 5. The Court explained that Nash's claims against the six individual HPD officers appeared to be barred by the applicable two-year statute of limitations. *Id.* at PageID.35–PageID.37. The Court ordered Nash to show cause in writing how his claims against these officers were timely. *Id.* at PageID.37. The Court also concluded that Nash failed to state a colorable municipal liability claim against the County, or a claim against any Doe defendant. *Id.* at PageID.32–PageID.35, PageID.37–PageID.38.

The Court received the FAC on May 3, 2024. ECF No. 7. In the FAC, Nash again alleges that the six individually named officers, the County, and ten Doe defendants violated his constitutional rights. *Id.* at PageID.52–PageID.55. Nash also realleges various state law claims. *Id.* at PageID.46. In his prayer for relief, Nash seeks, among other things, at least $3,000,000 in damages. *Id.* at PageID.54.

### III.   DISCUSSION

A.   **Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the

United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

**B.     Claims Against Individually Named HPD Officers and Doe Defendants**

In Counts 1–6, Nash alleges various claims against six individually named HPD officers. ECF No. 7 at PageID.52–PageID.53. Although he does not specifically refer to them in these Counts, Nash also names as defendants ten Doe defendants. *Id.* at PageID.47.

"A claim may be dismissed . . . on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quotation marks and citation omitted); *see also Belanus v. Clark*, 796 F.3d 1021, 1024–25 (9th Cir. 2015) (affirming dismissal of pro se complaint at screening pursuant to 28 U.S.C. § 1915A, in part, because prisoner's complaint, on its face, appeared to be untimely and barred by the applicable statute of limitations). The Court can raise on its own the possible expiration of the statute of limitations. *See Miron v. Lewis*, Case No. EDCV 23-01682-PA (DTB), 2024 WL 129264, at *2 (C.D. Cal. Jan. 11, 2024).

The applicable statute of limitations—that is, the deadline for commencing a lawsuit—for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's limitations period for personal injury actions. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (per curiam). In general, the statute of limitations for personal injury actions in Hawaii is two years. *See* Haw. Rev. Stat. § 657-7 (2016); *Bird*, 935 F.3d at 743. Although Hawaii law provides an exception in certain circumstances for causes of action that accrue while a person is imprisoned either on a criminal charge or pursuant to a court sentence, this exception does not apply to actions against, among others, police officers. *See* Haw. Rev. Stat. 657-13(3) (2016); *Namauu v. Dep't of Pub. Safety Hawaii*, Civ. No. 18-00062 JMS-RLP, 2018 WL 1733978, at *3 (D. Haw. Apr. 10, 2018).

Federal law determines when a claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (per curiam).

In certain circumstances, equitable tolling may extend the deadline for filing suit. To establish equitable tolling under Hawaii law, "a plaintiff must demonstrate '(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way.'" *Kobayashi v. Paderes*, Civ. No. 14-00325 DKW-KSC, 2014 WL 6775265, at *4 (D. Haw. Dec. 1, 2014) (quoting

*Office of Hawaiian Affairs v. State*, 133 P.3d 767, 789 (Haw. 2006)). This approach is consistent with federal law. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) ("[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." (quotation marks and citation omitted)).

      Here, to the extent Nash asserts claims against the six individual HPD officers based on events that occurred on March 26, 2021, those claims are untimely because Nash did not commence this lawsuit until March 25, 2024—that is, nearly three years later. *See, e.g., Belanus v. Clark*, 796 F.3d 1021,1026 (9th Cir. 2015) ("a cause of action for illegal search and seizure accrues when the wrongful act occurs"); *Alvarado Coronado v. Mayorkas*, No. CV-23-08571-PCT-MTL (ASB), 2024 WL 1406300, at *3 (D. Ariz. Apr. 2, 2024) ("Plaintiff's unlawful search and seizure claims accrued on . . . the date of his arrest[.]"); *Lepe v. Banister*, 232 F. App'x 735, 736 (9th Cir. 2007) ("[A] § 1983 claim for false arrest begins to run at the time the claimant becomes detained pursuant to legal process[.]" (quotation marks and citation omitted)).

      Nash also asserts claims against the individual officers and the Doe defendants based on a subsequent federal Indictment and its eventual dismissal.

Even assuming Nash could assert such claims, they would have accrued, at the latest, on October 7, 2021—that is, the date the Indictment was dismissed—not on April 4, 2022, as Nash contends. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1060 (9th Cir. 2002) (stating that "a claim of malicious prosecution does not accrue until the plaintiff is acquitted, because acquittal is an element of the claim"). Again, Nash did not commence this lawsuit until more than two years after October 7, 2021. Thus, even if Nash could raise these claims, they also are untimely.

Because Nash has failed to show either that his claims against the six individual HPD officers and the ten Doe defendants accrued no more than two years before March 25, 2024, or that equitable tolling applied, Counts I through VI and any claims against the Doe defendants are DISMISSED. Because Nash was unable to remedy the flaws specifically identified by the Court, the Court finds that granting further leave to amend is not warranted. The dismissal of Counts I through VI and any claims against the Doe defendants is, therefore, with prejudice. *See Abcarian v. Levine*, 972 F.3d 1019, 1032 (9th Cir. 2020) (concluding that district court properly dismissed claims with prejudice where amendment would be futile).

## C. Municipal Liability Claims Against the County

Nash again invokes "Monell Liability" to assert claims against the County. *See* ECF No. 7 at PageID.53.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690–91.  In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  A municipality cannot be held liable under Section 1983 "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted).

Thus, a plaintiff can allege municipal liability under Section 1983 in any of three ways.  First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a

policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066–67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388–89. In addition, a plaintiff must allege that a policy, custom, or failure to train in fact caused a municipality's employee to commit the constitutional deprivation. *Id.* at 391; *Monell*, 436 U.S. at 694.

Here, Nash does not allege that any individual HPD officer acted pursuant to a policy or that any officer's alleged actions were ratified by a final policymaker. Instead, Nash alleges that the HPD had "an established custom and practice of exploiting 'silver platter' referrals to circumvent both state and federal constitutional limits on officers' conduct." ECF No. 7 at PageID.50. Nash fails, however, to identify any pattern or practice within the HPD of referring for

prosecution cases stemming from unconstitutional conduct.  Isolated or sporadic incidents of reporting deficiencies from ten years ago and a single accusation that an officer lied to a grand jury in 2023 are not enough.  *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) ("Plaintiffs cannot allege a widespread practice or custom based on isolated or sporadic incidents; [liability] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." (quotation marks and citations omitted) (alteration in original)).

Nash also alleges that the HPD failed "to train and supervise its officers in honest reporting."  ECF No. 7 at PageID.51.  As the Court explained in dismissing the original Complaint, however, such conclusory allegations are insufficient to state a municipal liability claim against the County.  *See Hyer v. City & County of Honolulu*, 2020 WL 3440934, at *8 (D. Haw. June 23, 2020) ("Allegations of inadequate training are insufficient where they do not identify what the training practices were, how the training practices were deficient, or how the training caused the specific Plaintiff's harm.").  To the extent Nash asserts that his bare allegations are sufficient, ECF No. 7 at PageID.53, he is mistaken.  *See Haley v. Anguiano*, No. CV 23-582-SB(E), 2023 WL 8115145, at *2 (C.D. Cal. July 14, 2023) ("Contrary to the argument in the Second Amended Complaint, conclusory allegations cannot suffice to plead a municipal liability claim.").

Nash's municipal liability claims against the County are DISMISSED. Because the Court also finds that granting further leave to amend these claims is not warranted, particularly in light of its prior guidance and instructions, this dismissal is with prejudice.

**D.     State Law Claims**

In addition to his claims brought pursuant to 42 U.S.C. § 1983, Nash refers to various state law claims.  *See* ECF No. 7 at PageID.46.

In general, district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  District courts may decline to exercise supplemental jurisdiction over state law claims, however, if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(1).

Here, the Court will not consider Nash's state law claims because, for the reasons set forth in the preceding sections, all his federal claims are being dismissed with prejudice.  *See Garcia v. Nevada*, Case No. 2:17-cv-00359-APG-CWH, 2018 WL 11278694, at *6 (D. Nev. Mar. 9, 2018) ("The Court need not address the viability of Plaintiff's state law claims because it cannot exercise supplemental jurisdiction over any state law claim unless and until Plaintiff states a

cognizable federal claim."). Nash's state law claims are therefore DISMISSED without prejudice to him pursuing any timely state law claims in state court.

### IV. <u>28 U.S.C. § 1915(g)</u>

Nash is notified that this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis:

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

### V. <u>CONCLUSION</u>

(1) The First Amended Complaint, ECF No. 7, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) Because Nash has already had two opportunities to state a plausible claim for relief and has been unable to do so—despite explicit instructions from the Court as to how to cure the deficiencies in his claims—the Court finds that granting further leave to amend is not warranted. Nash's federal claims against the six individual HPD officers, the ten Doe defendants, and the County are therefore DISMISSED with prejudice, and this dismissal may constitute a strike under 28 U.S.C. § 1915(g).

(3) Nash's state law claims are DISMISSED without prejudice to those claims being pursued, if at all, in state court.

(4) Nash's Motion for Leave to Amend Complaint and Request for Stay of Proceedings Pending Plaintiff's Ongoing Disability, ECF No. 8, is DISMISSED as moot.

(5) The Court CERTIFIES that an appeal from this Order would be frivolous and, therefore, not taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir.1977) (stating that indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

(6) The Clerk is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: May 13, 2024 at Honolulu, Hawai‘i.



/s/ Derrick K. Watson
Derrick K. Watson
Chief United States District Judge

---

*Phillip Nash v. Lauren Pacheco, et al.;* Civil No. 24-00142 DKW-WRP; **ORDER DISMISSING FIRST AMENDED COMPLAINT AND ACTION WITHOUT LEAVE TO AMEND**